NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0469n.06
Filed: June 29, 2007

Case Nos. 05-6397 & 05-6458

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURTS FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| JAMES DOUGLAS and STEPHON MUNDY, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:  BOGGS, Chief Judge; BATCHELDER and GRIFFIN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.  James Douglas pleaded guilty to conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846, and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Stephon Mundy pleaded guilty to conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Both defendants appeal, claiming that the district court erred in finding that their guilty pleas were entered knowingly, voluntarily, and intelligently.  Douglas also challenges his sentence, claiming that the district court failed to calculate the guideline sentence properly, failed to consider the § 3553(a) factors adequately, and erred by finding that he is a career offender.  Because none of these claims was raised in the district court, we review them for plain error, *see United States v. Vonn*, 535 U.S. 55, 59 (2002), and finding no merit to any of these claims, we affirm.

## I.

On October 26, 2004, at around 3:00 a.m., a vehicle driven by Douglas, in which Mundy was a passenger, was stopped by a police officer on I-75 in Kentucky for speeding and swerving. During the traffic stop, the officer noticed a hand gun on the floor of the car and immediately called for back-up. Douglas and Mundy were patted down and police found that both were wearing body armor and that Mundy had a baggie of crack cocaine in his pants pocket. During the ensuing search of the defendants' vehicle, the police found an additional firearm on the center floorboard.

Both pleaded guilty to one count of conspiracy to distribute crack cocaine and one count of possessing a firearm in furtherance of a drug trafficking crime[1] — Douglas pursuant to a Fed. R. Crim. P. 11 plea agreement and Mundy without any plea agreement. Douglas, as part of his plea agreement, agreed not to move for a decrease in offense level because of a mitigating role and not to appeal or collaterally attack the guilty plea or conviction; he did not waive the right to appeal his sentence. Both defendants forfeited any interest in the confiscated bullet-proof vests and firearms. The district court sentenced Douglas to 144 months in prison and 10 years of supervised release, and Mundy to 211 months in prison and 5 years of supervised release. At no point in the district court proceedings did either of the defendants challenge the validity of his guilty plea.

## II.

Douglas and Mundy both claim that their guilty pleas were not knowingly and voluntarily entered. Because neither of these claims was raised in the district court, we review them for plain error. *See Vonn*, 535 U.S. at 59 (holding that a defendant who fails to raise Rule 11 claims before appeal has "the burden to satisfy the plain-error rule and . . . a reviewing court may consult the whole

---

[1]Mundy also pleaded guilty to one count of possession with intent to distribute crack cocaine.

record when considering the effect of any error on substantial rights"). The plain-error rule requires that Douglas and Mundy show "that there is 1) error, 2) that is plain, and 3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if 4) the error seriously affects the fairness, integrity or public reputation of the judicial proceedings." *See United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

"To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently." *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). The purpose of Rule 11 is to "ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). To further this goal, Rule 11 "requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.* at 378-79 (citing *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). The court must determine as well that there is a factual basis for the plea. Rule 11(b)(3). "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *United States v. McCreary-Redd,* 475 F.3d 718, 722 (6th Cir. 2007) (internal citations omitted). We will find this requirement was satisfied where the district court had the defendant state in his own words what he believed constituted the crime to which he pleaded guilty, *see United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995); where the defendant was read the entire plea agreement before signing it, and affirmed his agreement with the facts set forth in the agreement, *see United States v. Baez*, 87 F.3d

3

805, 810 (6th Cir. 1996); or, for charges that are easily understood,[2] where the court read the entire indictment or a summary of the charges and the defendant admitted to the charges, *see United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990).

The district court must also address the defendant in open court and determine that defendant understands the nature of the charge to which he is pleading. *See* Rule 11(b)(1)(G). "To satisfy this requirement, however, a district court judge 'in a simple case' need only read the indictment to the defendant and permit the defendant to ask questions about the charges." *Webb*, 403 F.3d at 379 (citing *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004)). "In any case[, simple or complex,] the district court must be satisfied, after discussion in open court, that the defendant understands the elements of the offense." *United States v. Syal*, 963 F.2d 900, 905 (6th Cir 1992). In cases claiming Rule 11(b)(1)(G) violations, we have found defendants were sufficiently informed of charges where the defendant received and discussed a copy of the charges with his attorney, the charges were read in open court, and the defendant testified as to his understanding of the plea agreement that contained the charges. *See, e.g., Webb*, 403 F.3d at 379.

Douglas argues that the district court failed to establish that there was a factual basis for his plea, as required by Rule 11(b)(3), and that the court failed to ensure that he understood the nature of the charges against him, as required by Rule 11(b)(1)(G). The record refutes this claim.

The transcript of the proceeding in which Douglas entered his plea demonstrates that the district court was careful to ensure that there was a substantial factual basis for the charges to which he pleaded guilty. The court had Douglas describe, in his own words, the crimes he committed, and

[2]For example, we have found a "common drug possession and distribution crime" to be easily understood. *See United States v. Valdez*, 362 F.3d 903, 910 (6th Cir. 2004).

4

the court questioned Douglas about the specific facts of the offenses. Douglas signed the plea agreement, which detailed the indictment and its factual basis and contained Douglas's own admission of guilt. Finally, the court read the "easily understood" charges in their entirety and summarized their content. The hearing transcript demonstrates that Douglas understood the nature of the charges to which he was pleading guilty. After the court read the indictment to him, Douglas stated that he understood the charges and that he had discussed them thoroughly with his counsel. He also stated that he understood the charges as they were contained in the plea agreement and what the government would have to prove in order to convict him of those charges if the case went to trial. Although the district court did not explicitly ask Douglas if he understood the elements of the conspiracy charge, Douglas testified that he had read and understood the charges against him. With regard to Douglas's entry of his guilty plea, we find no error, let alone plain error.

Douglas further argues that the waiver of appeal contained in his plea agreement — which waived the right to appeal everything except his sentence — was invalid because it was not entered knowingly, voluntarily, and intelligently. Douglas did not raise this objection to the district court, and our review is therefore for plain error. *See Vonn*, 535 U.S. at 59.

We have held that "a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005). For such a waiver to be valid, the district court must have adhered to the strictures set forth in Rule 11(b)(1)(N) — which requires the court to place the defendant under oath and determine in open court that the defendant understands "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence" — and the defendant must have understood the waiver. *United States v. Sharp,* 442 F.3d 946, 949 (6th Cir. 2006). We have held that even where

5

the district court does not specifically mention an appellate-waiver provision, "a prosecutor's summary of the key elements of the plea agreement can be sufficient to prove that the defendant's waiver was knowing and voluntary." *Id* at 951. And we have held that a district court's failure to inquire specifically whether the defendant understood the appellate-waiver provision does not render the provision invalid. *Id.* (citing *United States v. Wilson*, 438 F.3d 672 674 (6th Cir. 2006)).

Notably, Douglas himself changed the text of ¶ 10 of the plea agreement, which contained the waiver of the right to appeal; Douglas deleted from that section the waiver of his right to appeal or collaterally attack his sentence, and he initialed that change. Although Douglas was never specifically asked by the court whether he understood the appellate-waiver section of the plea agreement, during the plea hearing, counsel for the government expounded on the provisions of the plea agreement and, specifically, the provisions of ¶10. Douglas stated under oath that he understood its terms. *See Sharp*, 442 F.3d at 951. We find no error — and certainly no plain error — here.

Mundy likewise claims that the district court failed to ensure that he understood the nature of the charges against him. Mundy bases his claim on an exchange with the district court judge during which the district court described the intent-to-distribute element of the conspiracy charge and asked Mundy if he understood. Mundy replied "not for real." The record is entirely unclear, not only as to what Mundy meant by this response, but to what question Mundy was responding. Immediately prior to his "not for real" statement, Mundy responded affirmatively when asked if he understood the conspiracy charge generally. But after a further explanation, including discussion of the intent element and a description of what the government would have to prove, Mundy offered this ambiguous statement. What is clear is that the district court read Mundy's indictment in open court, Mundy was given the opportunity to ask questions, and Mundy testified that he understood

the charges and had gone through the elements of the offenses with his attorney. The record reflects that, not only did Mundy plead guilty, his attorney even conceded that Mundy had no defense to the charges. We find no error, and certainly no plain error, here.

Mundy also argues that the district court erred by failing to inform him of the maximum sentence at his sentencing hearing, as required by Rule 11(b)(1)(H). Because Mundy raises this claim for the first time on appeal, our review is for plain error and we may review the whole record to determine whether any error affected his substantial rights. *See Vonn*, 535 U.S. at 59.

The charges against Mundy carry a maximum penalty of life in prison with a mandatory term of supervised release. At the sentencing hearing, the district court informed Mundy that he was facing a minimum sentence of 15 years and that there was a chance it could be greater, but the court did not specifically mention the possibility of a life sentence or the mandatory supervised release. Our review of the record, however, satisfies us that Mundy was properly informed of the maximum possible penalty. Mundy was put on notice during his initial court appearance and subsequently by the indictment, which contained the maximum possible penalty of a life sentence and the mandatory term of supervised release. We have found harmless error in a situation in which a defendant did not claim he was unaware of the period of supervised release, but only that the court technically failed to comply with the requirements of the rule. *Syal*, 963 F.2d at 905 (citing *United States v. Williams*, 899 F.2d 1526 (6th Cir. 1990)). We find that, although the district court failed to comply technically with Rule 11(b)(1)(H) by not announcing the maximum possible sentence at the sentencing hearing, that error did not affect Mundy's substantial rights because Mundy had actual notice of the possible life sentence and mandatory supervised release.

Mundy claims that he did not enter his plea voluntarily and intelligently because he did not understand the elements of the conspiracy charge and because the district court did not inform him of the maximum possible penalty at the sentencing hearing. Because the district court failed to ensure that his plea was knowing and intelligent, Mundy complains, the district court violated Rule 11 generally. Mundy's claim has no support in the record.

At the sentencing hearing, Mundy testified that he understood the nature of the charges, the consequences that the charges carried, and the rights he was waiving by pleading guilty. The district court read Mundy's indictment and Mundy testified that he understood its contents. Although the district court failed to state the maximum possible penalty at the sentencing hearing, Mundy's substantial rights were not affected by this lapse because he was already on notice as to the maximum possible penalty. These facts are analogous to those in *Gardner*, 417 F.3d at 544, where we found that a defendant entered a guilty plea knowingly, voluntarily, and intelligently when he stated that he understood the charges, the potential penalties, and the rights he was waiving by pleading guilty as read or explained to him by the district court. Mundy has not shown plain error.

## III.

Douglas challenges his sentence on several grounds. First, he claims that the district court erred by adding four levels to his offense-level calculation for his use of body armor during the commission of the crimes to which he pleaded guilty. Douglas failed to raise this objection before the district court, and we therefore review it for plain error. *See Vonn*, 535 U.S. at 59.

According to U.S.S.G. § 3B1.5(2)(B), the offense level of a defendant convicted of a drug-trafficking offense is to be increased by four levels "if the defendant used body armor during the commission of the offense, in preparation for the offense, or in an attempt to avoid apprehension for

8

the offense." The heart of Douglas's argument is that during the plea hearing, he did not specifically state that he had engaged in any activity that amounted to anything more than mere possession of crack cocaine; therefore, he did not plead guilty to a drug trafficking crime; and because the four-level increase is applicable only where the offense of conviction is a drug-trafficking offense, the four-level increase was improperly applied. The record refutes this argument. The district court explicitly detailed for Douglas what the conspiracy in Count One of the indictment included, explaining that the government would have to prove, among other things, that Douglas planned with someone else to distribute crack cocaine and that Douglas knew that what he had planned to distribute was crack cocaine. When he was asked by the court if he understood that, Douglas nodded affirmatively, and when the district court asked him if he had done the things alleged in the indictment, Douglas said that he had. And, in any event, although the court raised Douglas's offense level from 32 to 36 for the use of body armor, the increase of which Douglas complains is not material because Douglas was ultimately found — correctly, as we will explain below — to be a career offender, a status that required a base offense level of 37. Perhaps we could say that this claim is not frivolous, but we certainly cannot say that Douglas has shown that the district court committed plain error by imposing this four-level increase in the offense level.

Douglas contends that the district court erred in sentencing him as a career offender. Under the Sentencing Guidelines:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

9

U.S.S.G. § 4B1.1(a). The Guidelines define a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that — . . . (2) is *burglary of a dwelling*, . . . ." U.S.S.G. § 4B1.2(a)(2) (emphasis added). In determining whether a particular offense is a crime of violence pursuant to § 4B1.1, this court has adopted a categorical approach, which limits courts to "an examination of the fact of conviction and the statutory definition of the predicate offense." *Butler v. United States*, 207 F.3d 839, 843 (6th Cir. 2000).

Douglas has several offenses in his criminal record, including a prior conviction for drug trafficking and another for second-degree burglary in Kentucky. Under Kentucky law, "a person is guilty of burglary in the second degree when, with intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling." Ky. Rev. Stat. Ann. § 511.030. These two prior convictions put Douglas squarely within the definition of a career offender.

Douglas next argues that the district court failed to consider all of the sentencing factors contained in § 3553(a), or to explain its application of those factors. We review for reasonableness the sentence imposed by the district court. *See United States v. Booker*, 543 U.S. 220 (2005). For a sentence to be procedurally reasonable, "the district court [must have] adequately considered and expressed its application of the relevant factors listed in 18 U.S.C. § 3553(a) to permit meaningful appellate review." *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006) (citation and quotation marks omitted). Although the § 3553(a) factors must be considered, we have found that the "district court need not explicitly reference each of the § 3553(a) factors in its sentencing determination." *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006); *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005) ("Although the district court may not have mentioned all of the [§ 3553(a)] factors . . . explicitly, and although explicit mention of those factors may facilitate review, this court

10

has never required the 'ritual incantation' of the factors to affirm a sentence."). Similarly, in *United States v. Dexta*, 470 F.3d 612, 615 (6th Cir. 2006), we upheld a sentence where "the district court did not explicitly consider each and every § 3553(a) factor," because the district court had developed a sufficient record "to allow for meaningful appellate review." The Supreme Court has recently acknowledged this approach as well. *See Rita v. United States*, 551 U.S. -- , Slip Op. No. 06-5754 at 16-18, 2007 U.S. Lexis 8269 at *32-34, 2007 WL 1772146 at *12-13 (U.S. June 21, 2007).

During Douglas's sentencing hearing, the district court did not discuss each of the § 3553(a) factors explicitly, but the record supports the court's statement that it considered those factors in determining the final sentence. Douglas's criminal history included not only the convictions that required his being classified as a career offender, but a general court martial with drug trafficking specifications. The district court noted that because of this criminal history, Douglas was facing a mandatory sentence of life in prison plus a consecutive 60 months for the § 924(c) conviction — a sentence that he avoided because the government moved under U.S.S.G. § 5K1.1 for a departure below that mandatory life sentence, due to Douglas's cooperation with the government. The district court engaged in an extended discussion with counsel for both the government and Douglas about the circumstances of the offenses for which Douglas was being sentenced, Douglas's own situation, including his extensive criminal history and the way his life had been ruined by drugs, and the court's approval of Douglas's cooperation with the government in its ongoing investigation of drug trafficking in the Cincinnati area. The court ultimately imposed a sentence far below the mandatory life plus 60 months, and, indeed, well below the range called for by the guidelines if, as Douglas's counsel urged, the court martial were disregarded as part of the criminal history. We conclude that

11

the court's consideration of the § 3553(a) factors was adequate to permit us to review the sentence, and our review persuades us that the sentence is, in all respects, reasonable.

## IV.

For the foregoing reasons, we **AFFIRM** the judgments of the district court.