NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0530n.06

No. 09-5188

FILED

**Aug 02, 2011**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| KYLE JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS and McKEAGUE, Circuit Judges; and DONALD, District Judge.[*]

ROGERS, Circuit Judge. Defendant Kyle Johnson pled guilty to the charge of conspiracy to manufacture fifty grams or more of methamphetamine. The district court sentenced Johnson to 217 months and six days' imprisonment. Johnson appeals his sentence against the advice of his counsel. His counsel filed an *Anders* brief, stating that the district court did not commit any errors in imposing Johnson's sentence. We agree, and we accordingly uphold the district court's sentence.

Johnson was indicted for conspiring to knowingly and intentionally manufacture fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Johnson pled guilty pursuant to a plea agreement. The plea agreement states the following facts:

> From on or before June 17, 2005, and continuing through on or about January 11, 2007, in Laurel County, in the Eastern District of Kentucky, and elsewhere, the Defendant knowingly conspired with Rocky Brummett, and others, to manufacture at least 50 grams of methamphetamine. As part of the conspiracy, the Defendant

_____

[*]The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

admits that he would buy and/or steal pseudoephedrine pills to be used in the manufacture of methamphetamine by Rocky Brummett and others. In return for supplying these pseudoephedrine pills to Rocky Brummett and others, the Defendant would receive money and/or methamphetamine. The Defendant would obtain these pills from various places in Kentucky, and other states, including Tennessee, Indiana, Georgia, and Ohio. The Defendant admits that he was arrested locally in both Ohio and Georgia while on trips to obtain pseudoephedrine pills for Rocky Brummett and others to use to manufacture methamphetamine, and that the amount of pills he obtained during these arrests are part of the instant conspiracy. The Defendant also admits that he joined the conspiracy knowingly and voluntarily.

Johnson's PSR attributed 341.1658 grams of methamphetamine to his actions, and assessed a base offense level of thirty-four under USSG § 2D1.1(c)(3) (for crimes involving at least 150 grams but less than 500 grams of methamphetamine). The PSR then assessed a two-level increase under § 2D1.1(b)(1) because Johnson possessed a dangerous weapon, a knife, during one of the robberies in which he stole pseudoephedrine pills. The PSR then raised Johnson's offense level to thirty-seven due to his status as a career offender under § 4B1.1. Finally, the PSR lowered Johnson's offense level by three levels for his acceptance of responsibility under § 3E1.1(a), resulting in a total offense level of thirty-four and a guidelines imprisonment range of 262 to 327 months.

At his sentencing hearing, Johnson raised two objections to his recommended sentence. The first concerned the 341.1658 grams of methamphetamine for which he was being held accountable. That quantity was based on the sum of separate quantities of methamphetamine seized from different defendants at different times relevant to Johnson's conspiracy: (1) 0.0043 grams from Kim Boggs, on February 16, 2006; (2) 0.0565 grams from Joe Meeler, on February 16, 2006; (3) 69.7 grams from the defendants' methamphetamine laboratory, on February 16, 2006; (4) 836 pseudoephedrine pills from Rocky Brummett, on February 16, 2006, yielding 53.005 grams; and (5) 1,847 pseudoephedrine

2

pills from Johnson and Bonnie White, on March 14, 2006, yielding 218.4 grams.[1]  Johnson argued that, since the 1,847 pseudoephedrine pills were the only drugs actually confiscated from him, only the yield from these pills, 109 grams of methamphetamine (using the agreed-upon 50% yield rate), should be attributed to him.  This would lower Johnson's base offense level from thirty-four (for crimes involving at least 150 grams but less than 500 grams of methamphetamine) to thirty-two (for crimes involving at least fifty grams but less than 150 grams of methamphetamine).  The district court overruled this objection after finding that the overall scope of the drug conspiracy was reasonably foreseeable to Johnson, making it fair to hold him also accountable for the methamphetamine amounts supplied by his co-defendants.

Johnson's second objection was to the two-level enhancement for using a knife during a robbery.  Johnson argued that he had not used the knife in furtherance of the drug conspiracy. Instead, Johnson argued, he had only used the knife in furtherance of the specific crime of robbery. The district court overruled this objection as well.  The court found that, by committing robbery with the knife, Johnson had used the knife in the course and scope of the drug conspiracy because the purpose of the robbery was to obtain pseudoephedrine pills, a necessary component of the methamphetamine production conspiracy.

Following the disposition of these objections, the district court noted Johnson's status as a career offender and accordingly adjusted his offense level to thirty-seven.  At this time, the court

---

[1]The amount of methamphetamine that can be produced from a given quantity  of pseudoephedrine is a matter of scientific debate.  The PSR assessed a 100% yield rate to obtain the methamphetamine quantities from the pseudoephedrine pills in items (4) and (5) above.  At sentencing, the parties agreed that 100% was an unrealistic rate and instead agreed to use 50% as the yield rate.  Thus, the methamphetamine quantities for items (4) and (5) should actually be half that listed above, i.e., 26.501 grams for item (4) and 109.2 grams for item (5).

asked Johnson's counsel whether his objections would be moot in light of Johnson's career-offender status; Johnson's counsel confirmed that they would. Also, at the end of the hearing, the court told Johnson's counsel that "again, for the record, I believe while you've objected to certain guideline calculations, those really are moot points because of the offender characteristic of the defendant being a career offender." Tr. at 39. Johnson's counsel conceded this. The court asked the *Bostic* question, but Johnson had no further objections.

The district court then sentenced Johnson to 217 months and six days of imprisonment. The court reached this number by beginning with the recommended guidelines range of 262 to 327 months, granting the Government's motion to depart, and reducing the sentence by 689 days Johnson had already served on related state charges. Johnson requested an appeal of his sentence against his counsel's advice, so his counsel filed an *Anders* brief. Such a brief must "refer[] to anything in the record that might arguably support the appeal." *Anders v. California*, 386 U.S. 738, 744 (1967). Johnson's counsel, however, merely opined that the appeal is without merit, noting that "Defendant's adjusted base offense level would have been increased to a 37 regardless of the ruling on the objections due to Defendant being a career offender." The Government agrees.

The district court committed no prejudicial errors in imposing Johnson's sentence. This is because the only objections Johnson raised—to the proper methamphetamine amount and to the two-level enhancement for possessing a knife—would not have affected his sentence if the district court had sustained them, in light of Johnson's unquestioned status as a career criminal offender. Johnson's crime, conspiracy to manufacture fifty grams or more of methamphetamine, carries a maximum sentence of life. Under USSG § 4B1.1(b)(A), which applies because of Johnson's career-offender status, Johnson's offense level was guaranteed to be at least thirty-seven. If the district

4

court had sustained Johnson's objection regarding the methamphetamine quantity, his base offense level would have been reduced from thirty-four to thirty-two, but USSG § 4B1.1(b)(A) would still have increased his offense level to thirty-seven. The same is true with respect to Johnson's objection to the two-level dangerous-weapon enhancement—even if the enhancement had not been applied, the career-offender provision would have brought Johnson's offense level back up to thirty-seven. Johnson's counsel conceded this during the sentencing hearing and in his *Anders* brief. Thus, even assuming that the district court erred by overruling either or both of Johnson's objections, any error was harmless, as it could not have affected Johnson's ultimate sentence.

We can identify no other error, prejudicial or otherwise, in the district court's sentencing decision. The court expressly considered Johnson's objections and gave relevant reasons for rejecting them. The court announced the applicable guidelines range, granted the Government's motion to depart downward (thus reducing Johnson's sentence), and credited Johnson's sentence for time served on similar state charges. The court mentioned the factors under 18 U.S.C. § 3553(a) as points of consideration in its decision—namely, Johnson's background, history, and characteristics, as well as the need for deterrence and the need to protect the public—and discussed these factors' application to Johnson's sentence.

Finally, Johnson's counsel made three arguments in favor of a lesser sentence, and the record shows that the district court adequately addressed these arguments. These arguments included: (1) that Johnson had had a troubled childhood, including a significant criminal history; (2) that Johnson's conduct of supplying pseudoephedrine pills for methamphetamine production was less serious than his co-defendants' conduct of actually manufacturing the methamphetamine; and (3) that Johnson's sentence should be proportional to the quantity of drugs involved. The court

5

expressly responded to all of these arguments and gave its reasons for rejecting them. Regarding Johnson's childhood, the court reviewed his lengthy criminal history and indicated that this history showed the need for imprisonment (as a deterrent to Johnson and as a means of protection for the public), rather than a reason to be lenient in sentencing Johnson. For Johnson's conduct as compared to that of his co-defendants, the court acknowledged that the co-defendants were "more culpable" than Johnson, but that regardless, the other § 3553(a) factors warranted the sentence imposed. And as for the drug-quantity argument, the court explained that, while it would take the drug quantity into account as a sentencing factor, making Johnson's sentence proportionate to the drug quantity's place within the 150 to 500 gram range was impermissible because this would effectively make the drug-quantity factor dispositive in the sentencing decision. These explanations plainly fulfilled the court's duty to consider all of Johnson's non-frivolous arguments. *See United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010).

The district court's judgment is affirmed.