CONCURRENCE
HELENE N. WHITE, Circuit Judge,
concurring.
I concur in the majority’s and Judge Boggs’s opinions. I write separately to respond to the dissent’s assertions regarding the common law.
As the majority observes, Congress originally defined burglary in the ACCA as “any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to •engage in conduct constituting a Federal or State offense.” Taylor v. United States, 495 U.S. 575, 581, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (quoting 18 U.S.C. § 1202(c)(9)). There is no question that if Congress had retained this original definition, which applied only to buildings, the challenged Tennessee statutory language—including both vehicles and tents— would not qualify as generic. Faced with the unexplained omission of the statutory definition, the Taylor Court opted to define generic burglary as involving a “building or structure,” rather than just a building, but rejected definitions of burglary that include “places, such as automobiles ... other than buildings.” Id. at 599, 110 S.Ct. 2143. The dissent concludes that in doing so, the Court did not intend to exclude dwellings that are not buildings or structures. We know this, according to the dissent, because “Taylor told us that common-law burglary always qualified as a violent felony under the Act.” And, because “the ‘habitations’ covered by the Tennessee aggravated burglary statute qualify as dwellings under the common-law definition of burglary,” Tennessee aggravated burglary is generic burglary covered by the ACCA.
But the dissent’s basic premise—that tents and vehicles were covered by the common law—is incorrect.[1] Black’s Law Dictionary is not the standard for defining the common law. Neither are state-court decisions interpreting the term “dwelling.” Rather, Blackstone and similar treatises are the standard references for the common law. See Taylor, 495 U.S. at 593 n.7, 110 S.Ct. 2143; see also McDonald v. City of Chicago, 561 U.S. 742, 768, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010); District of Columbia v. Heller, 554 U.S. 570, 594-95, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).
According to Blackstone, only permanent structures can be the subject of burglary:
Neither can burglary be committed in a tent or booth erected in a market or fair; though the owner may lodge therein: for the law regards thus highly nothing but *872 permanent edifices; a house, or church, the wall or gate of a town and though it may be the choice of the owner to lodge in so fragile a tenement, yet his lodging there no more makes it burglary to break it open, than it would be to uncover a tilted wagon in the same circumstances.
4 William Blackstone & St. George Tucker, Blackstone’s Commentaries 225 (1808) (emphasis added). Similarly, William Hawkins’s Treatise of Pleas of the Crown states:
From what has been said it clearly appears, That no Burglary can be committed by breaking into any Ground inclosed, or Booth, or Tent, &c. for there seems to be no Colour from any Authority ancient or modern, to make Offence Burglary that is not done either against some House, or Church, or the Walls, or Gates of some Town.
104 (3d ed. 1739). Further, in his leading 19th-century American treatise, Wharton defined dwelling-house as “any permanent building in which a party may dwell and lie, and as such, burglary may be committed in it,” and agreed that burglary “cannot be committed in a tent or booth in a market or fair, even although the owner lodge in it; because it is not a permanent but a temporary edifice.” 2 Francis Wharton, A Treatise on the Criminal Law of the United States 369 §§ 1568, 1570 (6th ed. 1868) (emphasis added).
The evolution of Tennessee’s burglary statute confirms that common-law burglary did not include tents or vehicles. Tennessee’s earliest burglary statute defined burglary as “the breaking and entering into a mansion house by night with intent to commit a felony.” 1829 Tenn. Pub. Acts 30. This mirrored the common-law definition of burglary, which did not include movable structures. See 1 Sir Edward Coke, The Third Part of the Institutes of the Laws of England 63 (15th ed. 1797) (“A burglar ... is by the common law a felon, that in the night breaketh and en-treth into a mansion house of another” with intent to commit a felony). It was not until 1885 that Tennessee’s burglary statute was expanded and began to resemble its modern-day statute. In 1885, Tennessee expanded its burglary definition to include railroad cars: “[w]hoever shall break and enter into any freight or passenger car, either in the daytime or night time, within this State, with intent to steal therefrom anything of value, or to commit a felony of any kind ... shall be guilty of burglary!.]” 1885 Tenn. Pub. Acts 66-67. This and all future expansions of the statute were clear departures from common-law burglary, as freight and passenger cars were not encompassed by the common-law definition of “breaking and entering into a mansion house.”
The dissent argues that references to scholars such as Blackstone are obsolete because the common-law has .evolved over time, and by 1984—the year the ACCA was enacted—most states considered vehicles and tents to be dwellings. First, the Taylor Court rejected the dissent’s method of analysis, explaining that “[t]he word ‘burglary’ has not been given a single accepted meaning by the state courts” and that Congress did not intend to define predicate offenses based on “technical definitions and labels under state law.” 495 U.S. at 580, 590, 110 S.Ct. 2143. Second, for its state-common-law proposition, the dissent cites Kanaras v. State, 54 Md.App. 568, 460 A.2d 61, 70-71 (1983). Even under Kanaras, however, Tennessee’s aggravated-burglary statute would be broader than common-law burglary. In Kanaras, Maryland’s Court of Special Appeals determined that a vehicle constituted a “dwelling-house” only if it was a “regular place of abode.” Id. at 69. It explained that “[generally, a vehicle-type structure, used as a vehicle primarily for transportation pur *873 poses, should not be regarded as a dwelling house, even if occasionally used for sleeping.” Id. Tennessee’s aggravated-burglary statute draws no such distinction. Rather, its definition of “habitation” includes a “vehicle that is designed or adapted for the overnight accommodation of persons,” and it also includes all tents without qualification. Tenn. Code Ann. § 39-14-401(l)(A), (B). Thus, under Tennessee law, a tent or a vehicle adapted for overnight use can be burglarized, even if never actually used as a “regular place of abode.” Kanams shows at most that it was possible under state common law that a tent or vehicle would constitute a dwelling.
Further, state common law did not categorically consider tents and vehicles, even when designed for the overnight accommodation of persons, to be dwellings. The dissent cites Kanams as “collecting cases” supporting the proposition that state courts “classify burglaries of motor homes and camping tents as burglaries of dwellings.” Dissenting Op. at 877. Kanams does no such thing. In all, Kanams string cites sixteen cases for the idea that “a vehicle such as the Shasta [Winnebago]” could “be considered as a dwelling house.” 460 A.2d at 69. Of these sixteen cases, eight of them do not involve burglary. See, e.g., Copley v. Rona Enterprises, Inc., 423 F.Supp. 979 (S.D. Ohio 1976) (a federal court interpreting “dwelling” under the Truth in Lending Act). Three others considered burglary of mobile homes that were neither self-propelled vehicles nor tents. See, e.g., State v. Ryun, 549 S.W.2d 141, 142 (Mo.App.1977) (“It is a typical mobile home, detached from the tow vehicle by which it may be moved. It has a ‘skirt’ from the floor level to the ground to block air passage under the floor, and is connected to an electricity transmission line.”). Two others involved the interpretation of burglary statutes that omitted “dwelling” from their definitions of burglary, and the courts instead considered whether a tent or a “movable sheep wagon” constituted a “building” or a “house.” See, e.g., State v. Ebel, 92 Mont. 413, 15 P.2d 233, 234 (1932) (“Common-law ‘burglary’ is defined as the breaking and entering of the dwelling of another ... but the controlling definition here is: ‘Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, railroad car ... ’ Here we have ‘a structure which has walls on all sides and is covered by a roof—a house, a building.”). Thus, only three of the sixteen cases support the dissent’s proposition, and these include two cases from the same Texas court, see Luce v. State, 128 Tex.Crim. 287, 81 S.W.2d 93 (1935); Martin v. State, 123 Tex.Crim. 82, 57 S.W.2d 1104 (1933), and one case, United States v. Lavender, 602 F.3d 639 (5th Cir. 2010), from a federal court of appeals that has since “adopted a ‘no-vehicles-or-tents’ definition.” Dissenting Op. at 879; United States v. White, 836 F.3d 437, 445-46 (4th Cir. 2016).
Rather than a change in state common law, the inclusion of tents and vehicles in state burglary law reflects the expansion of state statutory law. Indeed, Ebel explains as much, concluding that a movable sheep wagon was a “house” and a “building” under Montana’s burglary statute because the statute, unlike the common law, required only that a structure have “walls on all sides and [was] covered by a roof’ to be capable of being burgled. 15 P.2d at 234. Similarly, the California Supreme Court explained that California’s definition of burglary expanded to include tents and other movable structures because of a change in state statutory law, not state common law:
The first definition of the [burglary] offense found in our statute abolishes all the nice distinctions of the common law by the use of this language: ‘Any dwell *874 ing house, or any other house whatever, or tent, or vessel or other water craft’— language broad enough to include buildings of any kind and used for any purpose .... [T]he absence of more particular terms of description indicates an intention, on the part of the Legislature, to include every kind of building or structures ‘housed in’ or roofed, regardless of the fact whether they are at the time, or ever have been, inhabited by members of the human family.
People v. Stickman, 34 Cal. 242, 245 (Cal. 1867) (emphasis added). Thus, the dissent’s view of the common law is unsupported no matter when one considers the proper reference point to the common law to be.
Additionally, the dissent’s assertion that Michigan’s home-invasion statute and Kentucky’s second-degree burglary statute apply to common-law dwellings is unsupported. The Michigan home-invasion statute defines dwelling as “a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter.” Mich. Comp. Laws. § 750.110a(l)(a). That this definition is broader than the common law becomes clear when one looks at Michigan’s 1837 burglary statute, which adopted the common-law definition and criminalized “breaking] and enterfing] any dwelling-house in the night time” with the intent to commit a felony. 1837 Mich. Pub. Acts 627. In applying this definition of burglary, Michigan’s Supreme Court explained that “[t]he statutory definition of burglary in a dwelling-house, is the same as that of the common law,” .and looked to Blackstone’s Commentaries for the definition of a dwelling-house. Pitcher v. People, 16 Mich. 142, 146 (1867). It is true that, as the dissent observes, we have held that Michigan’s home-invasion statute, which proscribes breaking and entering a dwelling with the intent to commit a crime, constitutes generic burglary. United States v. Quarles, 850 F.3d 836, 840 (6th Cir. 2017). However, in doing so, we explained that “it would be a stretch, rather than a realistic probability, that a tree, vehicle, boat, outcropping of rock, cave, bus stop, or suspended tarp would be considered a ‘home.’ ” Id. at 839. We concluded that the home-invasion statute constitutes generic burglary because it covers no more than buildings and structures, not because its definition comported with common law.
Kentucky’s second-degree burglary statute similarly does not apply to common-law dwellings. This statute defines burglary in the second degree as “with the intent to commit a crime, [a person] knowingly enters or remains unlawfully in a dwelling.” Ky. Rev. Stat. § 511.030. However, the cases finding the Kentucky second-degree burglary statute to be generic made the same mistake we made in Nance—these unpublished opinions failed to look to the statutory definition of “dwelling.” See United States v. Moody, 634 Fed.Appx. 531, 534 (6th Cir. 2015); United States v. Jenkins, 528 Fed.Appx. 483, 485 (6th Cir. 2013). Although Kentucky defines “dwelling” as “a building which is usually occupied by a person lodging therein,” Ky. Rev. Stat. § 511.010(2), the statute further provides that “ ‘[b]uild-ing,’ in addition to its ordinary meaning, means any structure, vehicle, watercraft or aircraft: (a) Where any person lives; or (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation.” Ky. Rev. Stat. § 511.010(1). Thus, Kentucky’s definition of a “dwelling” includes vehicles, watercraft, and aircraft, and is thus broader than the common-law meaning of dwelling.
It is clear that the common law, regardless of continent or century, did not consider a tent as a dwelling that could be the subject of burglary. And, although no ae- *875 count of the common law discusses mobile homes and self-propelled vehicles for obvious reasons, it is apparent that the common law would not have regarded such places of habitation as permanent edifices worthy of protection as a dwelling. Thus, I reject two basic premises of the dissent’s reasoning—that the habitations covered by the Tennessee statute qualify as dwellings under the common-law definition of burglary, and that because Taylor includes common-law burglary as a subset of generic burglary, all dwellings are covered by generic burglary.
The dissent leaps .from the Taylor Court’s inclusion of all common-law burglary in generic burglary to the conclusion that common-law burglary covers all dwellings and habitations. “The greater includes the lesser. No matter how far the federal definition of ‘burglary’ extends beyond the common law definition—by eliminating, say, the requirement that the burglary occur at night or by expanding the kinds of structures involved to cover an office building or a shed—it still covers the Tennessee law, which focuses on burglaries of dwellings or habitations. Burglary of a dwelling in its many forms, including each of the forms identified in the Tennessee law, is always a federal burglary.” Dissenting Op. at 876. “By noting that modern burglary covers structures other than dwellings, the Court made clear that the phrase ‘building or structure’ in its definition of burglary includes all dwellings. ‘Structure’ is the broader category; ‘dwelling’ is a subset.” Dissenting Op. at 877. But the Taylor Court said no such thing. The Taylor Court never addressed the definition of dwelling, and never stated that either common-law or generic burglary includes all dwellings. Thus, the dissent’s assertion that “Taylor told us that common law burglary always qualified as a violent felony under the Act” is correct, but its import is simply that breaking and entering a dwelling house during the night with intent to commit larceny is generic burglary.
I do not disagree that the outcome of today’s decision leads to some puzzling results. But, as the dissent impliedly recognizes, the unsatisfactory outcomes in this area are the product of the combined effect of the requirements that we must (1) look to the elements of the offense, not the facts of the particular case, and (2) we may not look beyond the elements if a statute is indivisible. If the results are unsatisfying, we must accept them until Congress changes the ACCA or the Supreme Court its interpretation of it. Further, the dissent’s approach leads to its own puzzling outcomes. A defendant who reached into someone else’s unoccupied tent while camping and grabbed a granola bar would be subject to an ACCA enhancement; but a defendant who disassembled a tent and stole it and all its contents without entering it would not. And a defendant could steal a tent while it is collapsed and therefore not capable of being entered, bring it home, pitch it, enter it with the intent to use a computer to steal funds from a bank account, and be subject to the ACCA enhancement. A defendant who opened the door of a seemingly unoccupied vehicle hoping to find spare change, and then fled when confronted by the owner who used the car as his home, would be subject to the ACCA; but a defendant who knew the car contained all the owner’s possessions, waited for the owner to leave the car, then stripped it and stole all its contents would not be.
Whether Tennessee’s aggravated-burglary offense and similarly-defined offenses fall within Congress’s concept of generic burglary is a more difficult question. Persuasive arguments can and have been made on both sides. For me, the Model Penal Code’s expansive definition of “occupied structure” provides the strong *876 est support for the dissent. However, the majority’s and Judge Boggs’s thorough discussions of Taylor and the Supreme Court’s consistent rejection of vehicles &s a subject of generic burglary and emphasis on “buildings and other structures,” leads me to agree that generic burglary does not include such temporary structures as tents and vehicles, even when used as a habitation.