*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0321p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

  *v.*

      No. 04-1161

DONALD GARDNER,

      *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00006—Gordon J. Quist, District Judge.

Argued:  June 17, 2005

Decided and Filed:  August 1, 2005

Before:  NELSON and GILMAN, Circuit Judges; DONALD, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Stuart W. Harris, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellant. Joan E. Meyer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:**  Stuart W. Harris, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellant. Joan E. Meyer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

      RONALD LEE GILMAN, Circuit Judge.  Donald Gardner pled guilty to charges of possessing crack cocaine with the intent to distribute and of being a felon in possession of a firearm. The district court sentenced him to 210 months in prison followed by five years of supervised release.  On appeal, Gardner argues that his guilty plea should be set aside because it was not made knowingly and voluntarily and because he was denied the effective assistance of counsel.  He also contends that the district court erred in imposing a drug-quantity enhancement based upon nearly $16,000 found in Gardner's pickup truck at the time of his arrest.  Finally, Gardner argues that his sentence should be vacated in light of *United States v. Booker*, 125 S. Ct. 738 (2005).  For the reasons set forth below, we **AFFIRM** the judgment of the district court with respect to Gardner's

---

[*]The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

guilty plea and the court's calculation of the drug quantity, but **VACATE** Gardner's sentence and **REMAND** the case for resentencing in light of *Booker*.

## I. BACKGROUND

Gardner was arrested in October of 2002 after the police received a tip from a confidential informant that Gardner had been spotted with a large amount of cash and a quantity of crack cocaine in an area of Grand Rapids, Michigan known for heavy drug activity. In conjunction with Gardner's arrest, the police seized from his pickup truck 45 grams of crack cocaine, $15,796 in cash (wrapped in bundles of $1,000 each), 2 cellular phones, a pager, and several slips of paper containing names and telephone numbers. A subsequent search of his apartment and garage uncovered an additional 27 grams of crack cocaine, a .44-caliber revolver, and 50 live rounds of ammunition.

The indictment charged Gardner with "knowingly, intentionally, and unlawfully possess[ing] with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (crack cocaine)," in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(iii), and with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). He pled guilty to both counts.

At Gardner's sentencing hearing, the district court imposed an enhancement for possession of a dangerous weapon and a drug-quantity enhancement based upon the nearly $16,000 in cash found in Gardner's pickup truck, which the court determined was the proceeds from selling 598.74 grams of crack cocaine. Gardner objected to the latter enhancement, claiming that the money was unrelated to his cocaine dealing. He instead maintained that the bulk of the cash was from the sale of furniture and audio equipment at his cousin's nightclub, and the rest was from the sale of marijuana. The district court rejected Gardner's explanation and sentenced him to 210 months of imprisonment, followed by five years of supervised release. Gardner timely appealed.

## II. ANALYSIS

### A.     Standard of review

Because Gardner has waited until this appeal to first raise an issue regarding the district court's alleged failure to comply with the requirements of Rule 11 of the Federal Rules of Criminal Procedure, the "plain error" standard of review is applicable. *See United States v. Vonn*, 535 U.S. 55, 59 (2002). Rule 11 sets forth the procedures that a district court must follow before accepting a guilty plea.

Gardner also claims that he was denied the effective assistance of counsel. We review such a claim de novo. *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004).

Finally, Gardner contends that he is entitled to be resentenced in light of *Booker*, 125 S. Ct. 738. Following *Booker*, sentencing courts are no longer obligated to treat the United States Sentencing Guidelines as mandatory, but they must continue to give consideration to the Guidelines. *Id.* at 757, 764-65. We review the district court's interpretation of the now-advisory Sentencing Guidelines de novo. *United States v. Chriswell*, 401 F.3d 459, 463 (6th Cir. 2005). But a district court's ruling on the amount of cocaine for which a defendant is to be held accountable at sentencing is a finding of fact that will not be set aside unless clearly erroneous. *United States v. Walton*, 908 F.2d 1289, 1300-01 (6th Cir. 1990).

**B.          The district court did not err in accepting Gardner's guilty plea**

Gardner argues that his guilty plea was not made knowingly and voluntarily. He contends that his plea should be set aside because it was entered without a written plea agreement and with no "meaningful interaction" between Gardner and the district court.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *Brady v. United States*, 397 U.S. 742, 748 (1970). Rule 11 of the Federal Rules of Civil Procedure

> requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged.

*United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005). The purpose of Rule 11 is to assist the district court in determining whether a defendant's guilty plea is truly voluntary and to produce a complete record of the factors relevant to this determination. *McCarthy v. United States*, 394 U.S. 459, 465 (1969).

Gardner contends that his plea colloquy did not satisfy the "core concerns" of Rule 11 as articulated in *United States v. DeBusk*, 976 F.2d 300 (6th Cir. 1992); namely, "Was the plea coerced? Does the accused understand the nature of the charges? And does the accused understand the consequences of the plea?" *Id.* at 306 (citation and quotation marks omitted). Specifically, he claims that the district court failed "to provide a thorough review of the oral plea agreement." This contention, however, is not supported by the record. At Gardner's plea hearing, the district court carefully reviewed with him the provisions of the plea agreement and the rights that he was waiving as a result of pleading guilty. The charges in the indictment were read aloud, and the penalties for each offense were explained to Gardner. In addition, the district court specifically addressed Gardner's right to a trial by jury, his right not to testify, the presumption of innocence, and the government's burden of proof. Before his plea was entered, Gardner stated that he understood the nature of the offenses and acknowledged his guilt. He also said that he understood the consequences of his plea and the rights that he was waiving by pleading guilty.

The fact that most of the questions posed by the district court to Gardner required only a yes-or-no answer does not, as Gardner asserts, render their exchange meaningless. As this court has previously noted,

> [t]here is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple "Yes, your Honor" is sufficient to bind a defendant to its consequences.

*United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998). Moreover, the district court gave Gardner ample opportunity to ask any questions of the court about the charges or his rights, explaining that "[i]f you have any question lingering in your mind, ask the question. There is no such thing as a dumb question here. Nothing."

We conclude that Gardner's plea colloquy met the requirements established by Rule 11. Consequently, his plea was knowing, voluntary, and intelligent and should not be set aside. *See McCarthy*, 394 U.S. at 467 ("To the extent that the district judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary.").

**C.      Gardner's claim of ineffective assistance of counsel is not ripe for review**

Gardner also argues that his right to the effective assistance of counsel was violated by his attorney's failure to ensure that Gardner understood the nature and consequences of his guilty plea. Specifically, he claims that his attorney erred in failing to inform him that the government planned to assert that the nearly $16,000 found in Gardner's pickup truck should be considered as the proceeds of crack cocaine sales for the purpose of calculating Gardner's sentence.

A guilty plea can be involuntary as a result of the ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that a petitioner claiming the ineffective assistance of counsel with respect to a guilty plea must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). But ordinarily we will not review a claim of ineffective assistance of counsel on direct appeal because the record is usually insufficient to permit an adequate review of such a claim. *United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001). These claims are more properly raised in a postconviction proceeding brought pursuant to 28 U.S.C. § 2255. *United States v. Long*, 190 F.3d 471, 478 (6th Cir. 1999); *cf. United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000) (finding that "[a]n exception exists, however, when the record is adequately developed to allow this Court to assess the merits of the issue").

Here, the alleged ineffectiveness of Gardner's counsel is not apparent. The record contains no evidence regarding what advice, if any, his counsel provided with regard to the potential drug-quantity enhancement. We therefore decline to address Gardner's claims of ineffective assistance of counsel until the facts surrounding his attorney's alleged misconduct can be more appropriately developed by the district court. *See Long*, 190 F.3d at 478 (refusing to assess on direct appeal the merits of a claim of ineffective assistance of counsel because the record was inadequate); *see also United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000) (holding that claims of ineffective assistance of counsel "should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted") (quotation marks omitted).

**D.      The district court did not err in determining the amount of crack cocaine sold by Gardner for sentencing purposes**

Gardner next contends that the district court erred in calculating his sentence by improperly considering the $15,796 found in his pickup truck at the time of his arrest as the proceeds of crack cocaine sales. He claims that the court's conclusion was based upon "speculation or conjecture." In reality, according to Gardner, $10,796 of this money was the result of the sale of furniture and audio equipment from his cousin's nightclub and the remaining $5,000 came from the sale of marijuana.

Where the quantity of drugs at issue cannot be easily determined, the district court may estimate the amount, but the "court must err on the side of caution." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990). This court has determined that the due process rights of the defendant are violated if the district court "'create[s]' a quantity when there is absolutely no evidence to support that amount." *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir. 1994). For example, this court held in *Walton* that the sentencing court could not base its conclusion that the defendants had sold at least 455 grams of cocaine over a 130-week period solely on evidence that they had been dealing 3.5 grams per week at the beginning of that period (3.5 grams/week multiplied by 130 weeks equals 455 grams). The court found that the evidence was insufficient to support a finding of continuous drug dealing during the entire period. *Walton*, 908 F.2d at 1301-04. Likewise, this court held in *Zimmer* that the district court could not determine the amount of marijuana allegedly grown by the defendant in the previous eight years based solely on the amount seized at

the time of the defendant's arrest, because the court was simply guessing as to the scope and success of the defendant's past operations.  14 F.3d at 289-90.

In other cases, however, this court has "approve[d] the conversion of seized funds into an equivalent amount of drugs," provided that the converted amount is supported by a preponderance of the evidence.  *United States v. Samour*, 9 F.3d 531, 537 (6th Cir. 1993), *overruled on other grounds by United States v. Reed*, 77 F.3d 139 (6th Cir. 1996); *United States v. Keszthelyi*, 308 F.3d 557, 577 (6th Cir. 2002) (holding that there was sufficient evidence to support the district court's conclusion that a number of large cash deposits made into the defendant's bank accounts were attributable to drug sales, and that the district court had properly based the amount of cocaine sold by the defendant on the amount of those deposits); *United States v. Berry,* 90 F.3d 148, 153 (6th Cir. 1996) (affirming the district court's conclusion that the $6,300 found in the defendant's car "represented proceeds of drug-related activities," given that the defendant had been unemployed for almost a year and a half at the time he was arrested); *United States v. Bingham*, 81 F.3d 617, 634 (6th Cir. 1996) (approving the district court's determination of drug quantity based upon a tally sheet kept by a known drug dealer, because the tally sheet indicated that the defendant had purchased $1,000 of cocaine, which equaled 28 grams).

Here, as in the above cases, there was sufficient evidence for the district court to approximate the quantity of crack cocaine sold by Gardner.  Specifically, Gardner was observed late at night in a high-drug-traffic area sitting in a pickup truck not registered to him.  The cash found in the vehicle was located in close proximity to the crack cocaine and was wrapped in bundles of $1,000 each, which is consistent with the manner in which drug dealers maintain their proceeds.  A subsequent search of Gardner's apartment found jars and cooking utensils covered with cocaine residue, as well as packaging materials and more crack cocaine.  The district court reviewed the evidence and concluded that

> if you just look at the . . . presentence report, all the facts and circumstances in that report lead up to a rational conclusion by a preponderance of the evidence—circumstantial though it may be—that [Gardner] got that money by selling crack cocaine.  There is no evidence—no evidence at all that he sold marijuana. The marijuana that was found in his apartment was use amount.
> And as far as the sale of the furniture and sound equipment at the nightclub goes, without evidence of that, as to the money coming from that sale, [Gardner's] mere statement of it, it's hard to believe. . . .  [T]here are a lot of statements floating around out there, but where is the proof?

Given the weight of the evidence suggesting that the money found in Gardner's pickup truck came from the sale of crack cocaine and the lack of any evidence to support Gardner's claim that it was actually from the sale of other items, the district court's calculation of the drug quantity was not clearly erroneous.

### E.     Gardner's sentence should be remanded in light of *Booker*

Even though the district court did not err in considering the money found in Gardner's pickup truck as proceeds from the sale of 598.74 grams of crack cocaine, we nevertheless vacate Gardner's sentence and remand the case for resentencing in light of *Booker.  See United States v. McDaniel*, 398 F.3d 540, 547-51 (6th Cir. 2005) (vacating the defendant's sentence because of *Booker*, but ruling on the district court's interpretation of the Sentencing Guidelines "because the district court will need to consider the Guidelines-recommended sentences on remand").  This court also held in *United States v. Barnett*, 398 F.3d 516, 529-30 (6th Cir. 2005), that remand of a pre-*Booker* sentence is required absent "clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines

regime." In the present case, the court sentenced Gardner to 210 months' imprisonment, at the low end of the range of 210 to 262 months provided by the Sentencing Guidelines. We therefore vacate Gardner's sentence and remand this case for resentencing.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court with respect to Gardner's guilty plea and the court's calculation of the drug quantity, but **VACATE** Gardner's sentence and **REMAND** the case for resentencing in light of *Booker*.