File Name: 06a0449n.06

Filed: June 28, 2006

No. 05-3312

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | (No. 1:03-CR-99) |
| JACOB FORD, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     RYAN, COOK, Circuit Judges; and GWIN, District Judge.[*]

Gwin, District Judge:

With this appeal, Defendant-Appellant Jacob Ford, III, appeals his conviction on one count

of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and

one count of possessing with intent to distribute more than five grams of cocaine base, in violation

of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). A jury convicted Ford of both counts and the district court

sentenced him to 160 months' incarceration, five years' supervised release, and a $2,000 fine. Ford

timely appealed.

_____

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

With his appeal, Ford argues that the district court (1) abused its discretion in letting the jury use a transcript of recorded conversations at trial, (2) erred in finding that he possessed a firearm during the drug crime, (3) erred in assessing a criminal history point for Ford's conviction for failing to confine and insure a vicious dog, and (4) erred in denying his motion for a new trial. For the reasons that follow, we **AFFIRM** the defendant's conviction and the trial court's orders.

## I. Background

In October 2002, authorities in Kentucky arrested Lee Michael Taylor on federal gun charges. To receive a lighter sentence, Taylor agreed to become a confidential informant. [J.A. at 185]. While incarcerated, Taylor met several times with Officer Mike Matheson of the St. Bernard, Ohio Police Department, and ATF Agent Scott Chard. Informant Taylor told the officers that Defendant Ford and others trafficked narcotics and firearms at 25 Intervine Place, Apartment 3, in Cincinnati, Ohio. Officer Taylor and Agent Chard performed a corroborating background investigation of Ford and of the location. [J.A. at 96].

Cooperating informant Taylor agreed to make controlled purchases of crack cocaine from Ford. [J.A. at 102]. On October 31, 2002, Taylor told Officer Matheson that he had arranged to purchase one-half ounce of crack cocaine from Ford for a price of $425.00. After receiving this report Officer Matheson and Agent Chard fitted Taylor with a wire transmitter, provided cash for the controlled purchase, and delivered Taylor near 25 Intervine Place. Taylor went to Apartment 3 and met with Ford. Ford sold Taylor slightly less than one-half ounce of crack, for which Taylor paid $420.00. At trial, Taylor testified that Ford held a firearm during the transaction. [J.A. at 194].

On November 5, 2002, Taylor again contacted Officer Matheson. Taylor told Matheson that

he had arranged to purchase additional crack and a pistol from Defendant Ford. Matheson again wired Taylor, prepared him for the controlled purchase, and delivered him to the vicinity of 25 Intervine Place. After meeting with Ford, Taylor learned that Ford did not have drugs or a firearm for sale that day, so Taylor agreed to come back the next day. [J.A. at 207]. Later, Ford and Taylor spoke on the telephone and Ford told Informant Taylor that Ford would not have the items available for sale until November 8, 2002. On November 8, 2002, Matheson took Taylor back to 25 Intervine Place, with cash and wired with a recording device. Taylor went inside and purchased a pistol from Ford for $70.00.

In August 2003, the grand jury returned a two-count indictment charging Ford with unlawful distribution of more than five grams of cocaine base on October 31, 2002, and being a felon in possession of a firearm on November 8, 2002. [J.A. at 12-13]. The grand jury returned a superseding indictment charging Ford with a third count, being a felon in possession of a firearm between June 1, 2002, and August 31, 2002. [J.A. at 14-15].

Ford pled not guilty and stood for trial. During the trial, the district court permitted the Government to play Taylor's recorded conversations with Ford, and also permitted the jury to use a Government-prepared transcript as a listening aid. On September 2, 2004, the jury convicted Ford of counts one and two, and acquitted him of count three.

On February 4, 2005, Defendant Ford obtained new legal counsel. On March 1, 2005, Ford's new counsel filed a motion for new trial. With this motion for a new trial, Ford's new counsel argued that Ford's trial counsel had been ineffective. The district court denied the motion. The district court held a sentencing hearing on March 11, 2005. There, the defendant argued that he

should not receive criminal history points for his prior conviction for failure to confine and insure a vicious dog. The defendant further argued that he should not receive an offense level enhancement under USSG § 2D1.1 for possessing a firearm during a drug transaction. The district court disagreed with the defendant on both issues, and sentenced him to 160 months' incarceration followed by five years of supervised release. This appeal followed.

## II. Legal Standard

We review a district court's evidentiary rulings for abuse of discretion. *See United States v. Wesley*, 417 F.3d 612, 620 (6th Cir. 2005). We also review a district court's denial of a motion for new trial for abuse of discretion. *See United States v. Anderson*, 76 F.3d 685, 692 (6th Cir. 1996).

We review a district court's legal interpretation of the advisory sentencing guidelines *de novo*. *See United States v. Gardner*, 417 F.3d 541, 543 (6th Cir. 2005). The *de novo* review extends to mixed questions of law and fact. *See United States v. Settle*, 414 F.3d 629, 630 (6th Cir. 2005). For purposes of determining the recommended sentence under the advisory U.S. Sentencing Guidelines, we accept a district court's factual findings unless they are clearly erroneous. *See United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005).

## III. Analysis

The defendant challenges: (1) the district court's assessment of a two-point offense level enhancement pursuant to USSG § 2D1.1; (2) the jury's use of the transcript of the wire recording during trial; (3) the district court's denial of his motion for a new trial based on ineffective assistance

of trial counsel; and (4) the district court's assessment of one criminal history point for his prior conviction for failure to confine and insure a vicious dog and two criminal history points for committing the federal offenses while on probation.

A. *Offense Level Enhancement*

The district court added two levels to Defendant Ford's base offense level pursuant to USSG § 2D1.1 based on its finding that Ford possessed a firearm during the drug transaction on October 31, 2002. The defendant says insufficient evidence connected the firearm to the drug trafficking offense. The Government responds that trial evidence demonstrates that Ford possessed the firearm during the drug trafficking offense.

In making the argument that there was insufficient evidence to support the enhancement associated with possessing a firearm during a drug transaction, Ford principally contends that the district court enhanced his sentence based upon his possession of a firearm on November 8, 2002. However, and contrary to this argument, the district court made its finding based upon the October 31, 2002, crack cocaine sale, not the November 8, 2002, transaction. [J.A. at 65-66].[1]

As the defendant points out, "[a]n enhancement under § 2D1.1(b)(1) is proper only if the government establishes, by a preponderance of the evidence, that (1) the defendant possessed a dangerous weapon (2) during the commission of a drug-trafficking offense." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002).

---

[1]THE COURT:   Well, I don't have the transcript of the trial and, as I said, five months. My recollection was that Mr. Ford possessed a .22 caliber handgun that was to be sold. He also possessed another handgun which he declined to sell, which Mr. B specifically described as being in his hand at the time of the first drug sale.

[J.A. at 65].

The district court said it based the 2D1.1(b)(1) enhancement on trial testimony that Ford had a gun during the drug transaction. At trial, Cooperating Witness Taylor testified as follows with regard to his purchase of crack from Defendant Ford on October 31, 2002:

Q.  When you made this buy on October 31st of 2002, did Jacob Ford have a gun?

A.  Yeah.

Q.  What kind of gun was it?

A.  I can't recall what kind of gun it was.

Q.  Did he have a gun in his hands or did he have it in the holster or was he keeping it somewhere else?

A.  It was in his hands.

[J.A. at 194-195]. Based on this testimony, the district court did not err in assessing the two-level enhancement under USSG § 2D1.1(b)(1).

*B. Transcript Of Wire Recordings*

The defendant challenges the jury's use of a transcript of the wire recordings as a listening aid during trial. Defendant Ford objected to the jury's use of the transcript. The Government says the district court properly permitted the use of the transcript, and we agree.

Defendant Ford did not stipulate to the accuracy of the transcript. Under this circumstance, "'the transcriber should verify that he or she has listened to the tape and accurately transcribed its content. The [district] court should also make an independent determination of accuracy by reading the transcript against the tape.'" *United States v. Jacob*, 377 F.3d 573, 581 (6th Cir. 2004) (alteration in original) (citation omitted). The district court followed those procedures. Officer

Matheson testified that he and Agent Chard prepared the transcript, and that the transcript was accurate. [J.A. at 132].[2] The district court confirmed that it listened to the tapes and compared them to the transcript. But for "a couple of typos," the district court found the transcript to be accurate. [J.A. at 82].

The defendant points to the district court's reference to "typos" and Taylor's statement that the transcript was "worded wrong" in two instances. Even so, a "defendant challenging the use of a transcript at trial must show prejudice." *Jacob*, 377 F.3d at 581. Defendant Ford does not demonstrate that any of the inaccuracies prejudiced him. Taylor and Officer Matheson were available for cross-examination regarding the transcribed communications. The district court also remedied any inaccuracies in the transcript by instructing the jury: "[A]ny differences that you detect, if any, between the transcripts and what you believe that you hear, you should trust your own senses. And keep in mind Special Agent Chard and Officer Matheson did assist in the preparation of the transcripts." [J.A. at 110]. *See United States v. Elder*, 90 F.3d 1110, 1130 (6th Cir. 1996) ("The district court did not abuse its discretion in allowing transcripts to be used as aids to the jury when listening to tape recorded conversations in light of his limiting instructions.").

---

[2]Q.     Who prepared it?

A.     Special Agent Chard and myself.

Q.     Have you had an opportunity to compare the audiotape to the transcript?

A.     Yes I have.

Q.     Is it your conclusion that it's accurate?

A.     Yes it is.

[J.A. at 132]

The defendant also challenges the transcript on the ground that it identified him as one of the speakers in the recorded conversations. Taylor and Officer Matheson both testified regarding their knowledge that Ford was, in fact, one of the speakers. Their availability for cross-examination negates any prejudice to Ford. *See United States v. Crane*, 632 F.2d 663, 664-65 (6th Cir. 1980).

The district court did not abuse its discretion in permitting the jury to use the transcript as a listening aid.

## C. Motion For New Trial

Defendant Ford moved for a new trial in the district court based on ineffective assistance of trial counsel. The district court denied the motion. With this assignment of error, the defendant argues that the district court incorrectly interpreted the standard for his ineffective assistance claim. The Government responds that the defendant's motion was untimely and failed on the merits. We agree with the Government.

A motion for a new trial must generally "be filed within 7 days after the verdict or the finding of guilty, or within such further time as the court sets during the 7-day period." Fed. R. Crim. P. 33(b)(2) (2005). The jury reached its verdict on September 3, 2004. Ford did not file his motion for a new trial until March 1, 2005. Under Rule 33(b)(2), Ford's motion for a new trial was late. This fact alone justifies its denial.

## D. Criminal History Points

At sentencing, the district court assessed one criminal history point for the defendant's conviction for failure to confine and insure a vicious dog. The district court added two more

criminal history points because Defendant Ford committed the underlying drug and firearm offenses while on probation for his canine crimes. The defendant characterizes the state vicious dog offenses as "status" offenses that should not have contributed to his criminal history points. The Government responds that the prior offenses fall outside the realm of "status" offenses. The Court agrees with the Government.

Both parties direct the Court to USSG § 4A1.2(c)(2), which provides that sentences for the following prior offenses and offenses similar to them shall not count towards a defendant's criminal history point calculation: hitchhiking, juvenile status offenses and truancy, loitering, minor traffic infractions, public intoxication, and vagrancy. The defendant cites our recent opinion in *United States v. Cole*, 418 F.3d 592 (6th Cir. 2005), and argues that the "essential characteristics" of his canine offenses are similar to those of the exempted offenses of vagrancy or loitering.

In following the "essential characteristics" approach to USSG § 4A1.2(c)(2), we consider "whether the underlying conduct of the offenses is nearly corresponding; resembling in many respects; somewhat alike; having a general likeness." *Id.* at 597 (citation and internal quotation marks omitted). Ford violated Ohio's vicious dog law by failing to confine and insure a vicious dog. The state law provides in pertinent part that "no owner, keeper, or harborer of a dangerous or vicious dog shall fail to . . . securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top." Ohio Rev. Code § 955.22(D)(1). The law also requires an owner of a vicious dog to obtain liability insurance to cover "damage or bodily injury to or death of a person caused by the vicious dog." *Id.* § 955.22(E).

The defendant points out that the state law lacks a *mens rea* requirement. From this the

defendant concludes that the vicious dog offenses are akin to vagrancy or loitering, offenses that upset a neighborhood's quiet enjoyment. The Government responds that this factor does not exempt the canine offenses. Under section 4A1.2(c)(1) other offenses that lack a *mens rea* requirement, such as driving without a license, may contribute to a defendant's criminal history score. As the district court noted, the vicious dog offenses also involve a risk of injury to others that the offenses of vagrancy and loitering lack. This risk further distinguishes the defendant's canine convictions from vagrancy and loitering.

Similarly, the defendant's failure to insure the vicious dog is akin to driving an automobile without insurance. Such laws promote compensation to injured persons. We previously found that a conviction for driving without car insurance counted towards a defendant's criminal history score where the court imposed a sentence of probation for a year or more. *See United States v. Rollins*, 378 F.3d 535, 537 (6th Cir. 2004). Here, the state court sentenced the defendant to 180 days in jail, suspended, and one year of probation. This places the conviction for failure-to-insure outside the scope of USSG § 4A1.2(c)(2). The district court properly considered the conviction in its criminal history calculation.

The defendant also says that the Ohio Supreme Court recently found Ohio's vicious dog law to be unconstitutional, thus undermining the validity of his conviction. *See State v. Cowan*, 814 N.E.2d 846 (Ohio 2004). In *Cowan*, the Ohio Supreme Court found that Ohio Rev. Code § 955.22(D)(1) violated the right to procedural due process by denying citizens an opportunity to an administrative hearing regarding whether the dog was vicious or dangerous. Regardless, no court has found Ford's sentence for his vicious dog offenses to be unconstitutional, and he cannot attack

the sentence for the first time in this proceeding.  *See United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995) ("[D]efendant cannot collaterally attack the validity of his previous state conviction for robbery on the ground that the guilty plea was unconstitutional.").

We find that the district court properly included the defendant's convictions for failure-to-confine and failure-to-insure a vicious dog within its criminal history calculation.

IV.  Conclusion

For the foregoing reasons, we **AFFIRM** the defendant's conviction and sentence, and the denial of his motion for a new trial.