NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0005n.06

**No. 17-3784**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td>v.</td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td></td><td>)</td><td>COURT FOR THE SOUTHERN</td></tr>
<tr><td>OSCAR COLLADO-RIVERA</td><td>)</td><td>DISTRICT OF OHIO</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Jan 07, 2019
DEBORAH S. HUNT, Clerk

Before: COLE, Chief Judge; WHITE and NALBANDIAN, Circuit Judges.

HELENE N. WHITE, Circuit Judge.

Defendant-Appellant Oscar Collado-Rivera ("Collado-Rivera") appeals the district court's denial of his motion to suppress his statements to police officers, denial of his pre- and post-trial requests for new counsel, and scoring of the drug quantity attributable to him at sentencing. Collado-Rivera also argues that the district court did not give him an adequate opportunity to raise his sentencing objections and that he was coerced into waiving his *Miranda* rights. We vacate the denial of Collado-Rivera's counsel's post-trial motion to withdraw and remand to the district court to determine whether there was good cause for a substitution of counsel at sentencing. We affirm in all other respects.

**I.**

**A.**

On July 30, 2015, Ohio State Highway Patrol officers stopped a car hauler for a traffic violation and found nearly 40 kilograms of cocaine hidden in the vehicles carried on the car hauler. Over the next several months, an investigation identified Bolivar Emilio-Medina ("Medina"), Edgar Emanuel-Rodriguez ("Rodriguez"), and Defendant Collado-Rivera as potential participants in the conspiracy to transport cocaine.

Officers, including Detective Andrew Wuertz ("Wuertz"), executed a search warrant at Collado-Rivera's residence. Collado-Rivera was arrested during the search and taken to a Drug Enforcement Administration ("DEA") office for an interview. According to the officers, during the interview, Collado-Rivera admitted that: at Medina's request, he purchased a car hauler to traffic cocaine and move large amounts of currency; he participated in a July 14, 2015, trip to Boston with Medina and Rodriguez to distribute cocaine and transport currency; and he and Medina coordinated the cocaine shipment found in the car hauler on July 30, 2015.

Collado-Rivera, Medina, Rodriguez, and others were indicted on one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine.

**B.**

Before trial, Collado-Rivera filed a motion to suppress the statements he made during the DEA interview, arguing that his statements were coerced by law enforcement's promises of leniency and confidentiality, and were therefore involuntary. The district court held a hearing on the motion, and Wuertz, Special Agent Nick Eichenlaub ("Eichenlaub"), Collado-Rivera's girlfriend Luisa Guzman ("Guzman"), and Collado-Rivera testified.

Collado-Rivera testified that the SWAT team executing the warrant broke down his door, handcuffed him and Guzman, kicked him in the head, and made racially derogatory statements

about him. The SWAT team also fired a number of wooden bullets in the second floor of the residence, destroying furniture and breaking windows.

Officers transported Collado-Rivera to a DEA office to be interviewed. At the beginning of the interview, Collado-Rivera signed a *Miranda* waiver. According to Collado-Rivera, the officers informed him that everything he said would be confidential.

Collado-Rivera testified that during the interrogation, Wuertz told him that law enforcement knew about his involvement in drug trafficking and that things would be "different" if Collado-Rivera confessed. (R. 215, PID 665.) Wuertz left the room, then returned and informed Collado-Rivera that he had called the prosecutor and stated that Collado-Rivera would "sit down" with them. (*Id.*) Wuertz then allegedly told Collado-Rivera, "[D]on't worry because everything will be confidential. Nobody gonna know." (*Id.*) Wuertz and Eichenlaub, however, testified that Collado-Rivera confessed and that officers made no threats, or promises of leniency or confidentiality. Collado-Rivera also testified that Wuertz threatened to arrest Guzman if he did not cooperate.

Collado-Rivera testified that he initially denied any involvement in drug trafficking. Frustrated with Collado-Rivera's answers, one officer hit the table, and Wuertz told Collado-Rivera to "remember what [he] told [him]." (*Id.* at PID 672.) Collado-Rivera then gave the officers more information, but testified that he did not confess to any drug activity.

At a court appearance shortly after his DEA interview, the government revealed, in the presence of Collado-Rivera's co-defendants, that Collado-Rivera had confessed to police about drug trafficking with Medina and Rodriguez.

The district court denied the motion to suppress, explaining that the officers' promise of leniency was not objectively coercive, that the mistreatment of Collado-Rivera during the

3

execution of the search warrant "did not transform the, later, post-*Miranda* waiver, interview into a coercive environment" (R. 153, PID 438), and that any alleged promise of confidentiality did not overbear Collado-Rivera's will or serve as the crucial motivating factor for his statements.

## C.

More than two months before trial, Collado-Rivera's counsel filed a motion to withdraw, stating that Collado-Rivera had asked that he withdraw and that new counsel be appointed under the Criminal Justice Act ("CJA"). Shortly thereafter, the district court held a hearing to discuss the Government's plea offer, during which the court questioned Collado-Rivera about his concerns. Collado-Rivera explained that: (1) he disagreed with his counsel's strategic choices; (2) he had not received certain discovery; (3) he was frustrated by the continuances in the case; (4) he felt that his counsel disrespected Guzman; (5) his counsel was angry with him for seeking additional counsel; and (6) his counsel expressed frustration with him when explaining certain legal concepts.

The district court heard from defense counsel regarding the issues raised by Collado-Rivera. The district court then directed Collado-Rivera to "meet again" with his counsel and said, "If you are still convinced that your relationship is irretrievably broken, I will consider – I won't commit but I will consider a change of counsel." (R. 397, PID 1449.) Collado-Rivera proceeded to trial without renewing his request for new counsel.

## D.

At trial, Medina and Rodriguez testified that Collado-Rivera conspired with them to transport and distribute cocaine, describing Collado-Rivera's involvement in the scheme. Medina testified that Collado-Rivera arranged and facilitated the transportation of cocaine from Texas,

packaged cash for transportation, and provided Medina with cocaine for distribution. Rodriguez testified that he provided Collado-Rivera with cocaine, which Collado-Rivera distributed.

Collado-Rivera testified and continued to deny any involvement in drug trafficking. The jury convicted Collado-Rivera of conspiracy to possess with intent to distribute more than five kilograms of cocaine.

### E.

After trial, Collado-Rivera's counsel filed another motion to withdraw. The motion stated that Collado-Rivera instructed him to withdraw, and requested appointment of substitute counsel under the CJA. At Collado-Rivera's sentencing hearing, Collado-Rivera's counsel told the district court that "Mr. Collado asked me to ask the Court to rule on the motion to withdraw as counsel." (R. 403, PID 1974.) The district court responded in one word: "Overruled." (*Id.*)

After the district court resolved Collado-Rivera's counsel's sentencing objections, Collado-Rivera's counsel stated that his client had additional objections. The district court stated that it would give Collado-Rivera the opportunity to raise his objections and asked Collado-Rivera how many sentencing objections he had. Collado-Rivera immediately objected to the denial of the motion to withdraw, but the district court summarily declined to consider that objection. The district court told Collado-Rivera that it instead "want[ed] to sentence" Collado-Rivera and "the Court of Appeals can deal with the entire thing." (*Id.* at PID 1990.) The district court said, "I have overruled your attempt to change counsel at sentencing," and asked, "[i]s there anything further in mitigation or may I go on to the scoring of the guidelines?" (*Id.* at PID 1991.) Collado-Rivera did not raise any further objections.

**F.**

The PSR concluded that Collado-Rivera's offense involved 200 kilograms of cocaine, and thus recommended a base offense level of 36,[1] corresponding to quantities of at least 150 but less than 450 kilograms of cocaine. Collado-Rivera's counsel objected to the 200-kilogram calculation on the basis that the evidence showed that Collado-Rivera was accountable for less than 150 kilograms of cocaine. The district court overruled that objection, finding "there's clearly enough evidence . . . to show that we are in a realm between 150 and 400 [sic] kilos." (*Id.* at PID 1986-87.) Collado-Rivera's advisory guideline range was 235 to 293 months imprisonment, and the district court departed downward to impose a 200-month sentence.

**II.**

Collado-Rivera first challenges the district court's denial of his motion to suppress. When reviewing the denial of a motion to suppress a defendant's statements, we review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009). We "will not disturb the trial court's findings concerning specific events surrounding the confession unless clear error appears on the record." *United States v. Ray*, 803 F.3d 244, 265 (6th Cir. 2015) (internal quotation marks and citation omitted). However, we "review[] the ultimate question of voluntariness *de novo*." *United States v. Marks*, 209 F.3d 577, 581 (6th Cir. 2000).

There are "three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating

---

[1] That base level incorporates the PSR's recommendation for a two-level obstruction-of-justice enhancement on the basis that Collado-Rivera perjured himself at trial by denying any involvement with the drug trafficking conspiracy. That recommendation was accepted by the district court.

factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)). Whether a statement is involuntary depends on the totality of the circumstances. *Withrow v. Williams*, 507 U.S. 680, 689 (1993). Circumstances to consider include "the age of the accused, his level of education or intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the confession to a violent arrest and the inherent coerciveness of the setting in which the confession was given." *United States v. Murphy*, 763 F.2d 202, 205 (6th Cir. 1985). "In deciding whether a defendant's will could have been overborne, courts may also consider whether the defendant had prior experience in the criminal justice system." *Ray*, 803 F.3d at 266 n.13 (citation omitted). The government must prove by a preponderance of the evidence the voluntariness of an accused's confession. *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016).

Collado-Rivera makes two principal arguments on appeal: (1) the officers' violent actions and threats during his arrest created a hostile atmosphere that coerced him into confessing, and (2) the officers' broken promise of confidentiality overbore his will and was a crucial motivating factor for his confession. We find neither argument persuasive.

## A.

Collado-Rivera argues that the following facts created a coercive "atmosphere of terror and degradation" that rendered his subsequent statements involuntary: (1) the SWAT team fired wooden pellets that broke the windows and destroyed furniture even after the occupants had been restrained; (2) the residence was cold due to the broken windows and officers did not offer Collado-Rivera or Guzman a coat; (3) Guzman was dragged across the floor; (4) Collado-Rivera had not had contact with law enforcement before; (5) the arresting officers made derogatory and racial

7

statements about Collado-Rivera; (6) the arresting officers kicked Collado-Rivera in the head for asking what was going on; and (7) Wuertz threatened to arrest Guzman if Collado-Rivera did not cooperate.

The district court did not err in concluding that the coercive actions at the house did not overbear Collado-Rivera's will and were not the crucial motivating factor for his statements to the officers. Although Collado-Rivera had little experience with law enforcement, he is well-educated and fluent in English. His confession was made more than an hour and a half after the officers' actions and after he had been transported to the DEA office. Collado-Rivera did not testify that he expressed fears of violent reprisals when interviewed. Nor is there any indication that he was suffering from physical or emotional distress during his interview. The totality of the circumstances thus supports that the officers' actions did not overbear Collado-Rivera's will.

Collado-Rivera argues, relying on *United States v. Brown*, 557 F.2d 541 (6th Cir. 1977) and *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993), that the officers' actions at the residence created an "atmosphere of terror and degradation" that coerced him into later making his confession. (Appellant's Br. at 31.) However, in both *Brown* and *Finch*, the defendant confessed in close temporal proximity to, and in the same location as, the coercive actions. In *Brown*, the defendant made a confession in the backseat of a police car after the police violently beat him, handcuffed him, placed him in the police car, and then hit him. 557 F.2d at 548–49. The *Brown* court specifically considered "the proximity of the confession to a violent arrest" and the fact that the defendant was in "hysterics" as he confessed, among other factors, to conclude that the defendant involuntarily confessed due to an "overwhelming fear" of being beaten. *Id.* at 548, 554. In *Finch*, the defendant confessed after the police broke down the front door, pointed guns at the defendant and his girlfriend, and threatened to arrest the defendant's mother and girlfriend.

998 F.2d at 355. The *Finch* court held that the atmosphere was inherently oppressive and that the threat to arrest the defendant's mother and girlfriend was "a real threat." *Id.* at 356. *But see United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002) (holding that threats to investigate a defendant's daughter "were not of such a gravity that an ordinary person would have lost the will to resist").

Here, Collado-Rivera confessed almost an hour and a half after his arrest and after he was transported to the DEA interview room, the officers in the interview were not the same officers who broke down Collado-Rivera's door,[2] and Collado-Rivera did not testify that he considered the officers' violent actions during the interview. Moreover, Guzman had not been arrested, and the threat to arrest her was not repeated. *See United States v. Hunter*, 332 F. App'x 285, 289–90 (6th Cir. 2009) (finding that a threat to arrest defendant's girlfriend during defendant's arrest was not the crucial motivating factor where "there [was] no evidence in the record which indicates that the officers repeated the threat of a federal charge at the station, where [defendant] ultimately confessed"). Finally, there is no indication in the record that Collado-Rivera was hysterical or suffering from physical or emotional trauma during his interview.

In sum, there was adequate evidence to support the conclusion that the officers' violent actions and threat to arrest Guzman neither overbore Collado-Rivera's will nor served as the crucial motivating factor for his confession. Therefore, the district court did not err in denying the motion to suppress on this basis.

---

[2] The district court found that "Detective Wuertz entered the apartment after the SWAT team" (R. 153, PID 431), but does not discuss how soon after. Wuertz testified that he entered the residence after the SWAT team had restrained Collado-Rivera.

**B.**

The district court examined the totality of the circumstances and concluded that Collado-Rivera's will was not overborne by the alleged broken confidentiality promise and that the officers' confidentiality promise was not the crucial motivating factor for Collado-Rivera's statements.

The district court did not decide whether the confidentiality promise was objectively coercive because "Defendant did not testify that he was subjectively coerced by this promise or that it motivated him to make any statement." (R. 153, PID 437.) At the second step of the voluntariness analysis, the district court rejected Collado-Rivera's reliance on *Lynumn v. Illinois*, 372 U.S. 528 (1963), finding *Lynumn* inapposite because it preceded *Miranda* and the suspect in *Lynumn* was not otherwise informed of her rights, concluding that "without more" than the broken confidentiality promise, Collado-Rivera's will was not overborn. (*Id.* at PID 440.) At the third step, the district court concluded that Collado-Rivera had not presented any argument or evidence as to whether the officers' conduct was the crucial motivating factor for the confession.

The district court found that even if a promise of confidentiality was broken, the totality of the circumstances shows that Collado-Rivera's will was not overborne by the confidentiality promise. Although Collado-Rivera's testimony provided more evidence than the district court acknowledged,[3] his testimony also suggests that he was motivated by the promises of leniency.[4] The district court observed that Collado-Rivera did not testify that the confidentiality promise caused him to answer the officers' questions. And, Collado-Rivera testified that at the interview,

---

[3] The district court's characterization of the evidence fails to acknowledge that Collado-Rivera's testimony could be understood to suggest a cause-and-effect relationship between the officers' promises and Collado-Rivera's willingness to answer questions: (1) Collado-Rivera refused to answer questions, (2) the officers reminded him of the leniency and confidentiality promises, and (3) Collado-Rivera then spoke. That testimony is at least some evidence of causation.

[4] Collado-Rivera does not dispute the district court's finding that the leniency promise was not broken or illusory.

he asked about Wuertz's promise to speak to the prosecutor. Under these circumstances, we find no error in the district court's conclusion that the officers' promise of confidentiality neither overbore Collado-Rivera's will nor was the crucial motivating factor for his confession.

## III.

Relatedly, Collado-Rivera argues that his waiver of *Miranda* rights was involuntary. He did not, however, raise this issue at the district court, so we review for plain error. *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008)

"The test for whether a *Miranda* waiver is voluntary is essentially the same as the test for whether a confession is voluntary." *Binford*, 818 F.3d at 271 (citation omitted). Collado-Rivera relies on the same arguments he presents in arguing that his confession was involuntary, adding that he signed the *Miranda* waiver only out of concern for Guzman who was left at his residence without a phone or money due to the officers' violent actions. This argument appears to reiterate his prior argument that the officers' violent actions coerced his confession. We reject Collado-Rivera's arguments regarding the involuntariness of the *Miranda* waiver for the same reasons discussed above.

## IV.

Collado-Rivera next argues that the district court did not provide him with a reasonable opportunity to raise his own objections to the PSR. However, the sentencing transcript shows that the district court did give Collado-Rivera such an opportunity. After Collado-Rivera's counsel finished with his sentencing objections, the district court said it would give Collado-Rivera "an opportunity" to raise his objections and then asked Collado-Rivera how many objections he had. (R. 403, PID 1990.) Collado-Rivera responded that he had "a couple [sentencing] objections" but wanted to first raise his objection to the district court's denial of his counsel's second motion to

11

withdraw. (*Id.*) The district court declined to consider that objection, and then asked, "Is there anything further in mitigation or may I go on to the scoring of the guidelines?" (*Id.* at PID 1991.) Collado-Rivera did not respond to this question. Nothing in the transcript suggests that the district court deprived Collado-Rivera of an opportunity to make his sentencing objections at the hearing.

Collado-Rivera contends that the district court would not let him submit a letter that he wanted to present to the court. It is unclear from the transcript whether Collado-Rivera's letter addressed complaints about counsel or included the sentencing objections he wanted to raise. Even assuming the letter contained Collado-Rivera's objections, the district court gave Collado-Rivera the opportunity to orally raise his objections. After addressing the letter, the district court immediately asked if "there was anything further in mitigation," and Collado-Rivera did not respond. (*Id.*) Looking at the colloquy as a whole, the district court provided Collado-Rivera with an adequate opportunity to raise his objections.

Finally, Collado-Rivera contends that the district court violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure by not verifying that he had spoken to his attorney about the PSR. Rule 32(i)(1)(A) provides that "[a]t sentencing, the court . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report[.]" It does not appear that the district court directly asked Collado-Rivera if he discussed the PSR with his counsel. However, "[a] trial judge need not expressly ask the defendant if he and his counsel have read and discussed the report; instead, the court need only *somehow* determine that defendant and counsel have had an opportunity to read and discuss the [presentence report]." *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir. 2002) (internal quotation marks omitted). Here, the district court had a reasonable basis to believe that Collado-Rivera and his counsel had read and discussed the PSR. The sentencing transcript shows that the district court asked if Collado-Rivera had "more than ten days" to review the PSR, and Collado-Rivera answered in the affirmative. (R. 403, PID 1973.) Collado-Rivera's counsel also informed the district court

that he "spoke[] to [Collado-Rivera]" the morning of the sentencing, and Collado-Rivera had his own objections. (*Id.* at PID 1989-90.) Finally, Collado-Rivera and his counsel apparently had a dispute about which objections to raise, and Collado-Rivera sought a substitution of counsel on the basis that he believed his counsel was not making the right objections. These facts provide a reasonable basis for the district court to conclude that Collado-Rivera and his counsel read and discussed the PSR.

## V.

Collado-Rivera next challenges the district court's denial of his counsel's pre- and post-trial motions to withdraw. We review a district court's denial of an indigent defendant's motion to substitute counsel under an abuse-of-discretion standard. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).

The Sixth Amendment provides a criminal defendant with the right to counsel. However, "[a]n indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). "When reviewing a district court's denial of a motion to withdraw or substitute counsel, we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001). Once a defendant makes his dissatisfaction with counsel known, the district court must "inquire into the source and nature of the conflict." *United States v. Powell*, 847 F.3d 760, 778–79 (6th Cir. 2017).

**A.**

The district court did not abuse its discretion with respect to the pre-trial motion to withdraw.[5] Although the Government concedes that Collado-Rivera's request was timely, the second and third factors suggest that the district court did not abuse its discretion. As to the second *Mack* factor, the district court extensively inquired into Collado-Rivera's complaints about his attorney. The district court asked a series of follow-up questions in response to Collado-Rivera's statements. The district court then addressed those complaints with Collado-Rivera's counsel. That inquiry was adequate. *See United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009) (concluding that district court's inquiry was adequate when it "engaged in multiple lengthy discussions with [the counsel and defendant] that span many transcript pages").

As to the third *Mack* factor, the district court's discussion with Collado-Rivera and his counsel did not indicate that there was a complete breakdown in Collado-Rivera's relationship with his attorney. Collado-Rivera explained that he disagreed with some strategy decisions, delays in the proceedings, and the lack of discovery, but those disagreements do not suggest a breakdown in communication. *See Powell*, 847 F.3d at 779 ("[A] defendant's differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense." (quoting *United States v. Marrero*, 651 F.3d 453, 466 (6th Cir. 2011)). Collado-Rivera did raise more personal disputes, *e.g.* his counsel's alleged disrespect of his girlfriend. However, the district court gave Collado-Rivera the opportunity to resolve his differences with his counsel and inform the district court if he wanted to proceed with his request for withdrawal. Collado-Rivera did not renew or otherwise pursue his request for substitution. Finally, although the motion was timely,

---

[5] As the parties acknowledge, the district court did not explicitly rule on this motion at the hearing. Instead, the court instructed Collado-Rivera to speak with his counsel again and inform the court if he still wanted his counsel to withdraw. Even assuming this constituted a denial without prejudice, the district court did not abuse its discretion.

the district court noted that the substitution of counsel would have likely delayed the trial date, a concern that Collado-Rivera shared.

Collado-Rivera makes two principal arguments asserting that the district court abused its discretion. Neither argument is persuasive. First, Collado-Rivera argues that we cannot decide if the district court's inquiry was proper because the district court failed to make Collado-Rivera's letter to the court part of the record or read it into the record. However, the record shows that the district court provided the letter to the Government and Collado-Rivera's counsel. The record also shows that the district court considered, and responded to, issues raised in Collado-Rivera's letter. For example, the district court discussed alternative attorneys that were apparently mentioned in Collado-Rivera's letter. The district court also responded to Collado-Rivera's accusations in the letter that his counsel disrespected him and Guzman. Under these circumstances, the district court's inquiry was adequate. *See United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) (concluding that the district court's inquiry was adequate where "the district court summarized the contents of [the defendant's] letters and allowed [the defendant], his defense counsel, and the prosecutor the opportunity to address the complaint at issue").

Collado-Rivera relies on our decision in *United States v. Jennings*, 945 F.2d 129 (6th Cir. 1991), but that case is distinguishable. In *Jennings*, the district court "did not permit the defendants to explain fully their reasons for dissatisfaction with counsel in open court" and instead "instructed each defendant to submit his letter to the clerk and indicated that it would consider the letters later." 945 F.2d at 132. The *Jennings* court remanded to the district court because there was no evidence that the "district court did, in fact, consider the letters or whether the district court ever formally made a ruling as to each defendant's request for new counsel." *Id.* Unlike in *Jennings*, here, the

district court shared the letter with the parties and appeared to consider and respond to the contents of the letter.

Collado-Rivera points to mention in the transcript of two attorneys as potential replacements for Collado-Rivera's current counsel. However, the record does not suggest that Collado-Rivera was seeking his own retained counsel. Both motions to withdraw asked the district court to appoint substitute counsel under the CJA. Moreover, one of the attorneys mentioned in the transcript was a public defender, and Collado-Rivera referred to the other attorney as a potential "adviser to the side." (R. 397, PID 1444.)

Because the district court adequately investigated Collado-Rivera's concerns and there was not a complete breakdown of communication between Collado-Rivera and his counsel, the district court did not abuse its discretion with respect to the pre-trial motion to withdraw.

**B.**

We conclude, however, that the district court abused its discretion in denying Collado-Rivera's post-trial motion to withdraw. The first three *Mack* factors support this conclusion. Collado-Rivera requested that his counsel withdraw on May 24, 2017; at the time, his sentencing hearing was scheduled for June 6, 2017, and was later rescheduled for, and held on, July 20, 2017.[6] Under the circumstances, Collado-Rivera's request was timely. *See United States v. Evans*, 406 F. App'x 946, 951 (6th Cir. 2011) (concluding that the "defendant timely raised concern about [his counsel's] representation after he came to believe he had been 'coerced' into pleading guilty"). As to the second *Mack* factor, the district court summarily denied the motion to withdraw at the sentencing hearing without any inquiry or analysis. When Collado-Rivera tried to object to that ruling, the district court immediately responded, "Let's save that for the Court of Appeals."

---

[6] It does not appear that the continuance was related to Collado-Rivera's request, particularly because the district court ruled on the motion only after being reminded by Collado-Rivera's counsel.

16

(R. 403, PID 1990.) Collado-Rivera offered a document to support his request for withdrawal. But the district court refused to review it before sentencing, stating, "I want to sentence you. I want to get you on the way and the Court of Appeals can deal with the entire thing." (*Id.*) This inquiry was plainly inadequate and leaves us to guess the basis for Collado-Rivera's dissatisfaction with his counsel. *See Jennings*, 945 F.2d at 132.

Because the district court did not inquire into Collado-Rivera's complaints, we cannot determine the extent of the conflict and potential breakdown in communication between Collado-Rivera and his counsel. We know that at the sentencing hearing, Collado-Rivera's counsel noted Collado-Rivera had additional objections that the counsel was not "informed . . . of with any specificity whatsoever." (R. 403, PID 1990.)

The fourth *Mack* factor is neutral. On one hand, the facts that Collado-Rivera's counsel represented him throughout the case, was familiar with the case, and had already filed a sentencing memorandum suggest that substitution would not have promoted the prompt and efficient administration of justice. On the other hand, new counsel could prepare in a relatively short time for sentencing and Collado-Rivera's sentencing hearing had already been reset for over a month and a half after it was originally scheduled. Nevertheless, in light of all the circumstances, the district court's stated reason for denying Collado-Rivera's request—to get Collado-Rivera sentenced and let this court resolve the issues—was improper. Moreover, even balanced against the public's interest in prompt and efficient administration of justice, on this record, the other three factors all suggest that the district court abused its discretion.

The Government argues that the district court previously inquired into and addressed Collado-Rivera's concerns before trial so additional inquiry was unnecessary. However, Collado-Rivera was not presenting the same concerns as he had in his pre-trial request to substitute counsel.

In particular, Collado-Rivera stated at the sentencing hearing that he had an issue with the objections his counsel made to the PSR. The Government tries to analogize this case to *United States v. Smith*, 640 F.3d 580 (4th Cir. 2011). However, that case involved a defendant's "continuing" request for new counsel. *Smith*, 640 F.3d at 594. Here, Collado-Rivera made a separate request after trial with separate bases for the request for new counsel.

In sum, the district court abused its discretion by summarily denying the post-trial motion for new counsel. The appropriate remedy is to remand for a hearing on the issue whether, at the time of sentencing, there was good cause for substitution of counsel. *See Jennings*, 945 F.2d at 132 (remanding to district court to consider defendants' reasons for dissatisfaction with counsel and then determine if "good cause" for substitution existed); *see also Martel v. Clair*, 565 U.S. 648, 666 n.4 (2012) (noting that the proper remedy for a district court's abuse of discretion in denying a motion to substitute counsel "would have been to remand to the District Court to decide whether substitution was appropriate . . ."). If the district court determines that Collado-Rivera had good cause for substitution of counsel, then Collado-Rivera should be re-sentenced. If the district court determines that Collado-Rivera did not have good cause for substitution of counsel, then re-sentencing is unnecessary.

## VI.

Collado-Rivera finally contends that he should have been held accountable for less than 150 kilograms of cocaine at sentencing. The district court found that Collado-Rivera was responsible for 150 to 450 kilograms of cocaine. We review a district court's factual findings on drug quantity for clear error. *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir. 1990). "Where the quantity of drugs at issue cannot be easily determined, the district court may estimate the amount, but the court must err on the side of caution." *United States v. Gardner*, 417 F.3d 541,

546 (6th Cir. 2005) (internal quotation marks and citation omitted). "This court has determined that the due process rights of the defendant are violated if the district court create[s] a quantity when there is absolutely no evidence to support that amount." *Id.* (internal quotation marks and citation omitted).

The district court did not commit clear error because there was evidence that Collado-Rivera was responsible for 150 kilograms to 450 kilograms of cocaine. Medina testified that Collado-Rivera was responsible for 150 kilograms of cocaine—Medina, Collado-Rivera, and Rodriguez distributed 30 kilograms of cocaine on the Boston trip, and were involved in three additional 40-kilogram shipments of cocaine. Rodriguez testified that he conspired with Medina and Collado-Rivera to distribute 40 kilograms of cocaine on the Boston trip and 40 kilograms of cocaine that was seized by law enforcement on July 30, 2015. Further, about "half" of the 200-kilogram shipment received from Texas (or 100 kilograms) was intended for Collado-Rivera to distribute. (R. 400, PID 1632.) According to Rodriguez's testimony, Collado-Rivera trafficked at least 180 kilograms.

Collado-Rivera argues that Rodriguez testified that Collado-Rivera was responsible for only 140 kilograms of cocaine.[7] Collado-Rivera bases this amount on Rodriguez's testimony that in addition to the two 40-kilogram shipments, he typically gave Collado-Rivera two to three kilograms per week between July 30, 2015 and December 15, 2015. (Appellant's Br. at 53.) Collado-Rivera's calculation depends on Rodriguez's estimate of "two to three" kilograms per week. But Rodriguez elsewhere explicitly testified to at least 180 kilograms (40 kilograms,

---

[7] Collado-Rivera also relies on Medina's testimony, but that testimony attributes 150 kilograms of cocaine to Collado-Rivera. Medina's testimony thus supports the district court's conclusion because the Guidelines create the base level for "*[a]t least* 150 KG but less than 450 KG of Cocaine." U.S.S.G § 2D1.1(c) (emphasis added).

40 kilograms, and 100 kilograms). Given Medina's and Rodriguez's testimony, the district court reasonably attributed 150 to 450 kilograms of cocaine to Collado-Rivera.

Collado-Rivera next argues that the 30 or 40 kilograms from the July 14, 2015, Boston trip should not be included in the calculation because the indictment alleges that the conspiracy began "on or about" July 30, 2015. (R. 20, PID 149; R. 82, PID 271.) This court has previously held that "on or about" includes one to two months from the charged date. *United States v. Robarge*, 565 F.3d 1005, 1008 (6th Cir. 2009). By using the "on or about" language, the Government included conduct within one to two months of July 30, 2015. Therefore, the indictment charged Collado-Rivera with the conduct on the July 14, 2015, Boston trip.

In sum, the district court did not err by concluding that Collado-Rivera was accountable for at least 150 kilograms of cocaine.

## VII.

For the reasons stated above, we VACATE the district court's denial of Collado-Rivera's counsel's post-trial motion to withdraw and REMAND for the district court to determine whether there was good cause to substitute Collado-Rivera's counsel at sentencing. We AFFIRM in all other respects.